**GABRIEL, Adm. v SOUTHARD, et** ·

Ohio Appeals, 3rd Dist, Union Co

No 190. Decided April 6, 1939

Hoopes, Sanders & Hoopes, Marysville, for plaintiff.

Yager, Bebout & Stecher, Toledo; Clifton L. Caryle, Marysville; Stanley Crooks, Columbus; Hunter & Baker, Newark, for defendants.

## OPINION

By CROW, PJ.

This case originated in the Common Pleas Court of Union County, Ohio, by the petition of an administrator for a declaratory judgment in relation to participatory rights in the proceeds of personal property left by the administrator's decedent. From the judgment of that court an appeal was taken to this court on questions of law.

The facts necessary to understanding the controversy as established conclusively by the pleadings, evidence and stipulations, will be concisely stated.

Louis F. Blue, a resident of the aforementioned county, died testate February 16, 1933, without issue, leaving Ella S. Blue, his widow, and brothers and sisters and next of kin of deceased brothers and sisters. He left a last will and testament which was duly probated, by which he made devises and bequests to his widow and to certain of his said collateral kin.

On July 11, 1933, the widow Ella S. Blue began suit to contest the will, which was ended October 14, 1933, by a verdict and judgment setting the will aside.

While that suit was pending Ella S. Blue bought from the said collateral heirs of Louis F. Blue, their several interests in his estate, conditioned on her receiving all the estate disposed of to others than herself under the will, for which she was to pay seven thousand dollars; she borrowed that amount from a bank and the money was put in escrow to be paid on the basis of one thousand dollars a share per stirpes after it became certain she would receive all the property disposed of by the will.

To carry the arrangement into effect, written instruments alike in form were signed severally by the collateral heirs as follows:

"ASSIGNMENT.
"KNOW ALL MEN BY THESE PRESENTS:

That I, the undersigned, for the sum of $_____ and other valuable consideration received, to my full satisfaction, of Ella S. Blue, do hereby sell, assign, transfer and set over unto the said Ella S. Blue, any right to, or interest in, the estate of Louis F. Blue, which I may own or have the right to dispose of by virtue of my being related to the said Louis F. Blue, deceased, or by virtue of any will or other instrument in writing which might have been executed by the said Louis F. Blue. It being my intention to transfer all my right, title and interest in the estate of Louis F.

Blue, deceased, to Ella S. Blue, his widow.

IN WITNESS WHEREOF, I have hereunto set my hand at Marysville, Ohio, this 20th day of October, 1933.

_____

IN THE PRESENCE OF:

_____"

A definite sum of money. following the $ _____ appears in each of the assignments.

Thereafter the money was paid by Ella S. Blue and the documents were delivered to her; their effect is one of the two questions before us.

Prior to institution of the suit contesting the will Fred Gabriel had been appointed administrator with the will annexed of the estate of Louis F. Blue, and after determination of the suit he accounted in the probate court for the assets of the estate after deducting payments of claims and costs of administration and delivering to Ella S. Blue the remaining assets, she having been duly appointed administratrix of the estate to succeed him.

While Gabriel was administrator an allowance was made to the widow Ella S. Blue for her year's support, eight thousand dollars, which with two thousand and five hundred dollars specific exemption under §10509-54, GC, on which year's allowance Gabriel administrator paid Ella S. Blue fifteen hundred dollars and two thousand dollars respectively May 3, 1933.

Gabriel, administrator delivered to Ella S. Blue, successor administratrix, October 3, 1933, pursuant to his final account the following assets of the estate of Louis F. Blue: $546.70 cash; 70 shares capital stock of The Commercial Savings Bank as of the value of $7000.00; and 2000 shares of the capital stock of Ohio National Life Insurance Company as of the value of $20,000.00.

Ella S. Blue in her first and final account as administratrix of the estate of Louis F. Blue, charged herself with the 70 shares of bank stock at $7000.00, the 2000 shares of capital stock of the insurance company at $20,000.00, and cash $546.70, aggregating $27,547.70, and credited herself with the following items as of December 1, 1933, evidenced by vouchers: inheritance tax $276.15; L. W. Hazen, Probate Judge, $22.00 "Court costs"; life insurance company $8.00 for "Revenue Tax", and herself $27,241.55 "Distributive Share", total $27,547.70.

She had theretofore sold as administratrix, through the probate court, the 70 shares of bank stock for $7000.

While administratrix and upon her personal application in the probate court she took in kind at the value of $20,000, the 2000 shares of the insurance company stock and caused the same to be transferred into her name personally by new stock certificates issued in exchange for the stock certificates in the name of Louis F. Blue. And 1800 shares of that stock remained in her name until she died.

Gabriel became administrator of the estate of Ella S. Blue, and received assets listed in the inventory of her estate, as follows: Household goods $211.-50; Savings account of $4782.80 and "Commercial Account" of $1071.93 in a Marysville, Ohio, bank; undivided interest in real estate $800.00, and a residence property $3500.00, in Marysville, Ohio; and 1800 shares of the life insurance company stock, $46,800.00, total, $57,166.23.

The record fails to show what became of the other 200 shares of the latter stock.

The 1800 shares were of the identical shares distributed in kind to Ella S. Blue as part of the estate of Louis F. Blue; they were sold by Gabriel as administrator of her estate through the probate court and around the proceeds of that sale revolves the major controversy here.

The Louis F. Blue heirs contend that notwithstanding the written assignments they are entitled to the one-half pursuant to §10503-5, GC, which will be now quoted:

"When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such

relict from any deceased spouse, by deed of gift, devise, bequest or descent, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased children. If there are no children or next of kin of deceased children, then such estate, real and personal, except for the intestate share of the surviving spouse, if any, of such relict, shall pass and descend one-half to the brothers and sisters of such relict, or the next of kin of deceased brothers and sisters, and one-half to the brothers and sisters of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased brothers and sisters."

Louis F. Blue left no child nor lineal descendent of a child nor did he leave a parent, and consequently when the will perished, Ella S. Blue became absolutely and immediately the █ owner of the shares untouched by any interest or right whatsoever of the assignors. §10503-4, GC, the pertinent portion being as follows:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:

1. If there be no surviving spouse, to the children of such intestate or their lineal descendants, per stirpes.

2. If there be a spouse and one child, or its lineal descendants, surviving, one-half to the surviving spouse and one-half to such child or its lineal descendants per stirpes.

3. If there be a spouse and more than one child, or their lineal descendants, surviving, one-third to the surviving spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes.

4. If there be no children, or their lineal descendants, three-fourths to the surviving spouse and one-fourth to the parents of the intestate equally, or to the surviving parent; if there be no parents, then the whole to the surviving spouse."

When Ella S. Blue died, original and exclusive ownerships at █ once automatically arose, and solely so, by reason of §10503-5, GC.

At common law where there is no actually existing interest or right in property a mere expectancy, possibility, chance or hope is not assignable, but an assignment may be inoperative at common law and yet it may prove effectual in Ohio as an equitable one, as instanced by the case of Hite v Hite, 120 Oh St 253, which so far at least as relates to procedure is much like the case at bar.

However, an insurmountable barrier to the enforcement of the assignments in the present case, lies in the fact that the Ella S. Blue heirs claiming in virtue of them were not parties to the assignments, Ella S. Blue alone having paid the consideration to the assignors in compromise of the suit to contest the will of Louis F. Blue; and furthermore nothing in either the assignments or the evidence even hints that the assignors or the assignee intended to ever affect any property then or thereafter to be owned by Ella S. Blue. Literally the assignments covered only interests in the property of "the estate of Louis F. Blue."

It is, nevertheless, the position of the Ella S. Blue heirs that regardless of the assignments, they should receive of the $10500 comprising the years allowance of $8000 and $2500 cash exemption for that the two items did not go to Ella S. Blue by inheritance from Louis F. Blue, but constituted debts in her favor against his estate which debts or the money which paid them if they were paid, descended to her heirs.

Those items were debts which under

the statute must have been paid as preferred claims before there could have been a distribution of the Ella S. Blue estate.

Gabriel as administrator, had paid to Ella S. Blue $3500 of the $10500, and she as administratrix, according to her first and final account, paid three items aggregating $306.15; and she had re-, ceived from Gabriel, administrator, $546.70 cash and from the sale of the bank stock, $7000, amounting to $7546.70, which left remaining $306.15 cash beyond the $7000 not paid by Gabriel, administrator, on the $10500.

It was her statutory duty to pay to herself the $7000 unpaid of the $10500, which duty the law presumes she performed; and the presumption does not stand alone inasmuch as in her application for distribution to her of the shares of the insurance company stock in kind, she stated that as such administratrix (of the estate of Louis F. Blue) "she had paid all the debts of the estate."

Manifestly there is no merit in the assertion that any part of the $10500 has not been paid.

So far as the right to any of the money so paid is concerned, it is quite enough to say that there is no evidence tending to prove that included in the cash left by Ella S. Blue there is any portion which went to her in such payment.

The judgment of the court below denying the heirs of Louis F. Blue the right to one-half of the proceeds of the 1800 shares of life insurance company stock, is not sustained by any evidence and is contrary to law, for which reasons it will be reversed at the costs of appellees; and the record so requiring, final judgment will be entered by this court adjudging one half the said proceeds to appellants the Louis F. Blue heirs.

KLINGER & GUERNSEY, JJ, concur.